The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. The first case for argument this morning is 20-1565, Cywee Group v. Google. Mr. Keeson, whenever you're ready. May it please the Court, Jay Keeson for the appellant, Cywee Group. I will discuss two issues today. One, why the Bachman reference is not analogous prior art with respect to the two patents at issue. And two, why the Board erred in concluding that the appellee met its obligation to disclose real parties and interests under Section 312A2 and why that decision is reviewable by this Court. The Board found that Bachman was not in the same field of endeavor, then found in the second part of the analogous prior art test that it was relevant to the same problem. It reached that conclusion only by ignoring critical information about the differences between Bachman and the two Cywee patents at issue. The Bachman reference was directed to an entirely different object, the human body, and keeping track of limbs and by attaching sensors to the upper arm and forearm and the body and relative movement. Mr. Keeson, this is Judge Toronto. Can you address the following, which is on my mind? It seems reasonably clear from the two patents at issue here and from the expert testimony and the Board's decision that the key problem being addressed is getting the data right that is in turn mapped onto a flat screen. And that the mapping is a second part of the problem and probably not the more interesting and challenging part of the problem. Getting the data right, the error correction and whatnot for all of the orientation components is what Bachman is about to. Why is that not enough to make it analogous? Yes, Your Honor. Mapping is the second part of the problem and does require that the movement and location of the 3D pointing device be mapped onto a 2D display. What we do in the 438 and 978 patents is to take that movement and location and transform that to a movement pattern of an object on the 2D display. What you see in Bachman, however, is simply a rendering of the human body on the display. There is no transformation to an object like a pointer or a cursor. Figure 4 of Bachman makes it explicitly clear. What you see is simply the limbs themselves being shown on the screen. And it would just simply be the equivalent of having the smartphone in a person's hand in the 438 and 978 patents. The smartphone itself would appear on the screen. So that is an important aspect of the problem that is addressed by the 438 and 978 patents. Am I right in reading the claims of Bachman as addressing each sensor, not the combination of sensors that would appear on different parts of a human body? There's no reference to human body or even multiple sensors, as I recall. Tell me if I'm wrong. In the claims of Bachman. So, in the claims of Bachman, what you have are methods that are drawn to correcting the orientation of a sensor. But what you see here in the claims is that the orientation of the sensors is designed for tracking the movement of the sensor relative to each other. Whereas what we have here is the sensors inside a single housing. There's just one set of sensors inside a smartphone or a gaming controller. And even more importantly, Bachman specifically talks about the particular object itself has to be non-magnetizable. Mr. Caseman, this is Judge Chen. Just to follow up on Judge Toronto's question, are you saying that Claim 1 of the Bachman reference is somehow constrained in scope to exclude handheld devices? What I'm saying is... I just need a yes or no answer to that question, just so I can follow along with your train of thought. Absolutely. The claim itself does not talk about a human limb. That is correct, Your Honor. The claim simply talks about tracking the orientation of a sensor. Right. And so there's nothing in the claim per se that excludes the sensor being in a handheld device. Is that right? The claim itself does not, but the teaching of Bachman does. What about at column 13, line 48, where it talks about how examples include but are not limited to handheld devices, swords, pistols, or simulated weapons, etc.? It says handheld devices right there at column 13 of Bachman, right? Yes, it does, Your Honor. And in that same section, however, it repeatedly points out that those devices have to be non-magnetic devices. And it goes on to say that it specifically teaches away from magnetic devices like smartphones, etc. Is there something in the claims of your patents, Siwe's patents, that are limited to metallic devices? I think the answer is no, right? Your Honor, 3D pointing devices today are things like smartphones and gaming controllers, and they're full of magnetic components. All of our phones are magnetic. I understand Samsung's phones or other people's phones are magnetic, but there's nothing in the claim that restricts the scope of the claim to things that are metallic. It restricts it to 3D pointing devices, Your Honor, and 3D pointing devices are magnetic. And that's one of the key differences in the objects between Bachman and the Siwe patent. Is there evidence in the record that the time of filing of these patents, your priority date, that's how it was understood, 3D pointing devices? Yes, Your Honor. The patents were filed in 2010, and in fact the first iPhone, which was introduced in 2007, three years earlier, was already on the market. And our patents were directed to using things like a smartphone, as shown in Figure 6 of the 438 patent, with an exploded view of a smartphone. It was designed to use a smartphone in gaming and navigation, very different from tracking... But the point, just so I understand, the claims are not restricted to a smartphone, right? I know you're talking about the evidence of a smartphone that existed at the time of 2010, but the claims themselves don't say smartphone, is that right? The claim says 3D pointing device, which is in the specification a smartphone or a gaming controller are examples of 3D pointing devices. Whereas Bachman has nothing to do with pointing devices, it has never been cited in the field of pointing devices. And in fact, all the citations to Bachman, the 20 citations to Bachman, have nothing to do with pointing devices. On top of that, the solution itself, the sensor fusion algorithm, if you will, the data coming out of the sensors are processed differently. Bachman uses a Gauss-Newton iteration. We use a non-recursive extended common filter. Sorry, a non-linear recursive extended common filter. And so even the solutions are different. The only way that the board concluded that Bachman addressed the same problem was by simply saying that it used sensors and it got data from the sensors. And so we contend that that is an impermissible overgeneralization of the problem that this court has repeatedly found. Mr. Kesson, this is Judge Toronto. I noticed one thing and I don't think any of the parties have made anything of it and I wonder if you can tell me why this is immaterial. The 978 on its face is placed into a number of classifications in the U.S. classification system. One of them is 345473. That classification was among the few classifications listed in Bachman as having been searched. Is that immaterial that there is at least that kind of perhaps quite indirect evidence of a connection between the fields? Thank you, Your Honor. That is indeed exactly correct. 345-156 is indeed found in the 438-978 patent. It's actually in the three of the classifications searched. It's not mentioned in the 438 and as Your Honor pointed out, it is mentioned in the 978. But it is actually mentioned in the classification even in the 438. It's classified in 345-156 and the exact same classification was indeed searched. That is yet another indication that the examiner did not consider this. It's a relevant conclusion that can be drawn from that. Very briefly, Your Honor, whenever this court has found that a prior art in the patent refers to the same problem, it has never been when you have a different purpose or a different structure and function or when it would really not have logically commended itself to the problem. I am out of time and I will... Will we serve your rebuttal for you, sir? If that's okay. Mr. Smith? Thank you, Chief Judge Prest. This is Matthew Smith on behalf of the athletes. I will address a few of the questions that came up in the colloquy regarding the analogous art argument and then talk about the real parties of interest argument after that if there's time. I think as was clearly expressed in the colloquy, there is this sort of very simple connection of clear findings by the board supported by substantial evidence that the obtaining of the orientation data or the mathematical method by which one combines the output of sensors and then turns that into a direction that a device is pointing in space. That method was the method of central importance, the question of central importance that the SIWEI patent dealt with. And this is something the board found expressly based on the patent, based on SIWEI's own discussion of its patent and its experts' discussion of its patents. And so it's not really something that SIWEI challenges, but it is the specific finding by the board that this particular problem is of central importance to the patent. And in turn, the Bachman reference, as the board found, addresses the same problem. And that's also something that SIWEI doesn't particularly challenge directly. And part of the reason why I say that is the Bachman reference teaches all of the algorithmic parts of the claims that are challenged here in these two inter-parties review proceedings. That is, Bachman actually was found by the board to render every single claim element that could be sort of classified as directed to this main problem of the 438 and 978 patents. And in so doing, it really demonstrates that it is directed to exactly that problem of central importance that the board found. One of the issues that was brought up during Mr. Kaifman's presentation was the issue of sensors in the Bachman reference. And the question was posed as to whether the Bachman reference in its own claim 1 is directed to a sort of combination of sensors that works together in some relative way to track human body posture or whether it's directed to a single sensor. And of course, it's directed to a single sensor. But I just want to point out that Bachman uses the word sensor in a way that could be potentially confusing. It's clear once you dig into the details of Bachman. But Bachman uses the word sensor to refer to a package, like an orientation sensor. And within that package, there are the nine sensors of the 978 patent, including the six sensors that are decided in the 438 patent. Mr. Smith, this is just trying to... I think I heard Mr. Kaifman say that in the claims or at least claim 1 of Bachman that the sensor that is the subject of the claim somehow has... The data that it is using as claimed, is data relative to other sensors? I may have misunderstood that. But can you clarify if you understand what I just said? Can you clarify? I absolutely understand what you just said, Judge Toronto. That contention by Psywee, which I think is suggested by Psywee in its briefing, but never really sort of clearly stated, is 100% incorrect. What's happening here, if you look at figure 4 of Bachman, there is this image of a person who has these sensor devices, 401, attached to various limbs. And these sensor devices, 401, are actually complete orientation sensors in and of themselves. And that means they have within them the three magnetic sensors, the three axial acceleration sensors, and the three angular acceleration sensors. They are what Bachman calls the MARG, M-A-R-G sensors. And Bachman explains that with respect to figure 4. And the sensor on the guy's belt is or is not attending to what's happening on, say, the forearm or near the hand? Yeah. Each of those sensors, 401, produces an independent orientation. And this is why, in our briefing, we have always tried to point out the distinction between saying Bachman sensors track orientation versus Bachman sensors track the orientation of limbs with respect to one another. Because that really minimizes, I think, in an inaccurate way what Bachman sensors are doing. One could say, for example, the forearm is bent at a 90-degree angle relative to the upper arm. And that might be a relative orientation. But that's not, in fact, what's happening in Bachman. In Bachman, each of those sensors, 401, is producing an independent orientation that then gets mapped onto the 2D display that you see there in figure 4. And I think Mr. Kaysen said something about also maybe this was just on the mapping part, that in the patents at issue here, mapping is designed to produce movement on the screen. And that's not true in Bachman or something similar to what I just described. Yes, thank you, Judge Toronto. So I understood what Mr. Kaysen could be saying to be that in the 438 and 978 patents, the mapping takes the 3D pointer device and renders it into a different image. So rather than, say, having an image of the 3D pointing device on the screen, you would have an image of a cursor, like a little arrow or a crosshair or something like that. Whereas in Bachman, I think what Saiwee is arguing here is that what shows up on the screen is the image of the person. But this is all sort of amounts to exactly the same thing, because what Bachman's system is doing is taking the orientation of each limb segment, and then it has to render the person. It's not actually the actual physical person on the screen. It is some image that represents the person, and that has to be drawn by a computer as assembled by the orientation that comes off the various sensors. And so there's really no substance to this sort of attempted distinction. What the computer attempts to draw on the screen is always going to be some collection of pixels that have a certain meaning to the human mind that sees it, but is never going to be the physical object itself. So, for example, the computer in Bachman could have drawn the human figure wearing different clothing or something like that, and that would be the sort of transformation that Saiwee is talking about here, but it's really just not a meaningful one. The meaningful transformation, to the extent there is any in the 438 or 978 patents, is the transformation of coordinate systems. So, from the three-dimensional orientation that one gets in both the patented issue here and in Bachman, to some sort of representation on a flat screen. And that's the issue that the board found was either a minor part of the problem or not part of the problem that the 438 and 978 patents addressed, and found so based on substantial evidence, including Saiwee's own experts testifying, that this was really just simply an application of the rules of geometry and known mathematics about the transformation of coordinate systems. And I would add that throughout the entire briefing process of the Federal Circuit, even below, before the board, Saiwee has never explained why the mapping process was any particular problem facing the inventors, and why that mapping process was not just the application of geometric rules, exactly as its own expert testified. Can I ask you the same question about the classification system that I asked Mr. Kaysen? I don't remember anybody making anything of either the classifications into which Bachman and the two patents here were placed on their face, or the classes that those documents record the examiner having searched. Has our law or the board's set of decisions sometimes used classifications, and is that of any relevance either generally or here? Yes, I think it is. Yes, Judge Troncho, I think it is. I point you to the Henry Ellis case, which is cited in both parties' briefs. It's an older court of claims and customs patent appeals case, but it essentially says that the classifications of the patent issue and the prior art are of some relevance, although perhaps of secondary relevance to looking at and understanding what the problem is the inventors were trying to address by evaluating the teachings of the specification and then respectively the teachings of the prior art. So yes, certainly of relevance, but perhaps of secondary relevance. Did either side make anything of that here? No. Can I ask you one question about the real party and interest piece? Yes, absolutely. And that's this. I don't think that Saiwi has separately appealed the denial of discovery apart from the arguments that there was real party and interest status here, and as a result the proceeding should be terminated. But suppose somebody in Saiwi's position had separately appealed the denial of discovery. Why would that fall into the reviewability bar? Because after all, the result of that would be a remand to, if we were to agree that the discovery denial was wrong, to enhance the record, which might then lead the board to render a different decision about whether a real party and interest was in fact missing or undisclosed or created a time bar, a final decision that we could not in fact review by assumption of this question. But why would a discovery denial be unreviewable? Yes, thank you, Your Honor. So the essential issue is whether or not the board's decision on whether to grant discovery is sufficiently related to the underlying real party and interest question as to fall within the preclusion from the appeal under 314D. And I'll say just as a prelude to that, you're absolutely right, I don't think that Saiwi appealed that. In other words, Saiwi is using the argument about the discovery motion as sort of an aggravating factor in its analysis on the merits of the RPI motion, not as a separate grant of appeal. But to answer your question directly, the only real point of this discovery is to get at the substance of the RPI motion. So in the case where... Go ahead, please finish answering that question. Okay, thank you. In the case at bar, there's no reason for this discovery to even be requested or to be granted except to support this argument that Saiwi is making on the merits, which is absolutely free to make to the board. It just can't invoke this court's jurisdiction to then appeal that issue. Thank you. Mr. Foreman. Thank you, and may it please the court. Saiwi asked this court to review the board's determination that Google's petition identified all real parties and interests as required under Section 312A2. This court's precedent has held that the board's 312A2 real party and interest determination is final and not appealable. Can I ask, Mr. Fowler, could you... Mr. Foreman, I'm sorry. This is Jennifer. Could you address Judge Taranto's point, because I think it's a kind of difficult one, as to why the discovery request should not be reviewable, notwithstanding, if we agree with you, the non-reviewability of the real party and interest question in this case? Sure. Well, I agree with Mr. Smith that the discovery question purely goes to the real party and interest issue, so I think it would be part and parcel with the real party and interest determination, and thus not subject to review. In addition, just seeking an appeal of the discovery question, I'm unclear under what jurisdiction the court would have to review the discovery issue, since it's not a final written decision under 319. Well, let's assume 1295 jurisdiction, we've already said, in at least one context, is broader than the final written decision. And if the jurisdictional grant would cover the ruling, which would, after all, be a ruling that led to a final written decision, then you would have to resort to whatever that language deriving from Quozo is about related to. Sure. I still think that if the 314D non-review bar is to have any meaning, it must cover all aspects of the board's RPI determination, and that would include the question of discovery. I believe, is that my time? Yes, if you finished answering the question. All right. Back to your friend, Mr. I think we butchered your name. So, is it Kaysen or what? It's Kaysen. Thank you, Your Honor. If I may proceed with my rebuttal, in response to what Mr. Smith said and that Judge Torano asked, figure four of Bachman in column 13, line 64 onwards, it makes clear that each of these marked sensors are on different parts of the body, and it is their relative position on the rigid articulated body 402 that is tracked, and you detect the posture of the body through these separate 401 sensors. So, in fact, you are looking at the position of each marked sensor relative to each other. And I think Bachman clearly shows that. And, in fact, by showing the whole body on the display, you can once again see that this is really in keeping with what Bachman was about, which is about tracking soldiers. He was doing his work in the Naval Postgraduate School as part of his dissertation. It was about wounded soldiers in the field. The mapping piece is indeed important, and it is a geometric calculation. But, however, there is no such geometric calculation in Bachman. It's just rendering that body on the screen. That particular issue is not minor. The board called it minor, but it wasn't minor. The word mapping is mentioned 30 times in the 978 patent. Figures 8, 9, and 11 of the 978 patent directly address that mapping. And, in fact, in a gaming and navigation environment, that mapping to something like an object or a pointer becomes important. So, we do challenge the problem, and we do challenge aspects of the problem as being completely unaddressed by Bachman. Algorithmically, as I mentioned before, algorithmically, it is also not the same. One uses a Gauss-Newton iteration, and this one uses a, our patents use a recursive extended common filter. Secondly, the citations actually support the classification point made by Judge Toronto. The fact that there is no citations to Bachman from a 3D pointing device is important because that is what reflects the fact that even if you found it in a search, you wouldn't pick it up because it's really a different problem. Finally, in this particular case, discovery just happens to be RPI related. Discovery according to the consolidated trial practice guide begins only after institution. Page 7 of the consolidated trial practice guide makes that clear. If it were not for the joiner of these other time-barred petitioners and others who sought to join this IPR, and if Google had produced evidence, which it was required to do under 37 CFR 21, it was required, if I may just finish, Your Honor? Yes, please finish. Google was required to provide evidence contrary to a position it took with respect to the RPIs when it said Huawei made an infringing form, but in fact the same logic applied to LG as we found out, and then we sought discovery to pursue that. The whole notion of the board not following the law and its procedures and its own discovery practices as set out in Ventex and AIT is very much at issue and would never come up before institution. By the structure of the IPR itself, the discovery issue would come up only after institution. It just happens to be RPI related in this case. Okay, thank you. We thank all sides, and the case is submitted.